IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN THOMAS McREYNOLDS, JR.                                         PLAINTIFF

V.                                                      CIVIL CAUSE NO. 1:24-cv-173-DAS

VAULT E&S INSURANCE COMPANY                                         DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Vault E&S Insurance Company's motion to exclude the opinions and testimony of Plaintiff's vocational expert, Allison Shipp Berry. Having considered the briefs, exhibits, and being otherwise fully advised, the Court concludes that the motion should be granted in part and denied in part.

Federal Rule of Evidence 702, as amended in 2023, requires the proponent of expert testimony to establish by a preponderance of the evidence that the proposed testimony satisfies the Rule's requirements. The Court's role is not to determine whether the expert's conclusions are ultimately correct, but whether the testimony rests upon sufficient facts and data, reflects reliable principles and methods, and demonstrates a reliable application of those methods to the facts of the case. At the same time, Rule 702 does not authorize exclusion merely because an opposing party identifies weaknesses in an expert's assumptions, disputed factual predicates, or competing interpretations of the evidence. The Court must distinguish between defects that render an opinion unreliable and disputes that properly remain for cross-examination.

The record reflects that Berry is a vocational rehabilitation expert with substantial education and experience in vocational assessment, work-capacity analysis, labor-market access, and earning-capacity evaluation. Her credentials include advanced degrees in rehabilitation counseling and an MBA, as well as certifications in rehabilitation counseling and life-care

planning. The Court therefore rejects Defendant's broad contention that Berry is wholly unqualified to testify in this case. She plainly possesses specialized knowledge concerning vocational impairment and diminished earning capacity.

The more difficult question concerns the scope and reliability of the specific opinions she proposes to offer. The Court first addresses Berry's opinions regarding Plaintiff's vocational impairment and diminished earning capacity arising from an asserted occupational change following the accident. On this issue, the Court concludes that Plaintiff has carried his burden under Rule 702.

Berry reviewed Plaintiff's medical records, interviewed Plaintiff regarding his post-accident functional limitations, reviewed certain financial materials, and utilized vocational resources and labor-market tools commonly employed in her field, including occupational classification and wage data. She testified that she assessed Plaintiff's transferable skills, evaluated the physical demands of his pre-accident and post-accident work, reduced his vocational profile from light to sedentary work, and concluded that Plaintiff sustained a substantial reduction in access to the labor market. She further opined that Plaintiff could no longer perform the interventional pain-management work that allegedly constituted a significant component of his pre-accident practice and instead transitioned into a more sedentary supervisory or medical-director role.

Those opinions are sufficiently tied to the facts of record to satisfy Rule 702. Plaintiff himself testified that he could no longer perform interventional pain-management procedures at the same level after the accident and that he pursued the Baptist Hospital arrangement after recognizing he could no longer continue his prior work in the same manner. Berry's opinions concerning occupational change and diminished work capacity are therefore not untethered

abstractions. They are grounded in Plaintiff's account of his work history, his claimed physical limitations, and vocational analysis within Berry's field of expertise.

Defendant's criticisms of these opinions largely concern the weight that should be assigned to them rather than their admissibility. Defendant correctly observes that Berry selected particular occupational codes and wage data that may be subject to challenge. For example, Berry utilized a national anesthesiologist wage and compared it to a Mississippi wage associated with a "medical and health services manager" classification. Defendant further notes that Berry did not correlate the national anesthesiologist wage to Plaintiff's specific geographic region, experience, or practice structure, and that she acknowledged alternative occupational codes could have produced different numbers.

Those are legitimate areas for cross-examination. But the existence of alternative vocational classifications or competing wage assumptions does not render the methodology itself inadmissible. Vocational experts routinely rely upon occupational classification systems and wage data to estimate earning capacity. The fact that Defendant believes Berry selected imperfect comparators does not establish that she employed no identifiable methodology at all. Nor does Rule 702 require a vocational expert to eliminate every possible factual dispute before the testimony becomes admissible.

Defendant also emphasizes that Plaintiff continued receiving a $240,000 salary both before and after the accident. But Berry expressly testified that her earning-capacity analysis was not intended as a reconstruction of Plaintiff's historical W-2 compensation; rather, it was intended to estimate the difference in vocational earning *capacity* between Plaintiff's pre-injury work and his post-injury occupational role. Whether that distinction is persuasive is a matter for the jury. Conceivably, a plaintiff may, at least for some period, continue receiving comparable

compensation while nevertheless claiming diminished future earning capacity or reduced occupational opportunity. The Court cannot conclude that Berry's testimony on this issue is so disconnected from accepted vocational analysis as to require exclusion.

The Court reaches a different conclusion, however, with respect to Berry's opinions concerning alleged losses to Plaintiff's medical practice.

Although Plaintiff attempts to characterize Berry exclusively as a vocational expert offering vocational opinions, the reports themselves demonstrate that Berry went further. In both her 2023 and 2025 reports, Berry analyzed the financial performance of McReynolds Anesthesia, P.A., compared pre- and post-accident income figures, and calculated alleged annual income losses for the practice. These opinions are not merely vocational assessments. They are, in substance, opinions regarding business income loss and economic damages.

The Court concludes that Plaintiff has not demonstrated by a preponderance of the evidence that Berry is qualified or that her methodology is sufficiently reliable. Berry is not a CPA, economist, or business-valuation expert. Nothing in the cited record reflects specialized training or experience in forensic accounting, medical-practice valuation, or economic-loss modeling for professional entities. More importantly, the methodology she employed in calculating alleged practice losses lacks the indicia of reliability required by Rule 702.

Berry's business-income calculations were based largely upon a comparison of profit-and-loss statements from selected periods before and after the accident. Yet she admittedly did not review tax returns for either Plaintiff or the medical practice, did not verify the underlying financial data, and did not meaningfully analyze alternative economic causes affecting the practice's revenue. Most significantly, the record reflects that Plaintiff entered into a fundamentally different contractual relationship with Baptist Hospital beginning in January

2023, a change Plaintiff himself described as materially altering the structure and finances of his practice. Berry acknowledged reviewing certain contract materials but expressly testified that the Baptist arrangement did not "impact" her opinions because she was "not a contract expert."

That concession exposes a central analytical defect. Berry's methodology assumes that any reduction in the practice's income was attributable to the accident while failing to account for an acknowledged and substantial change in the business model of the practice itself. Rule 702 requires more than a temporal comparison followed by an assumption of causation.

The Court is likewise persuaded that these opinions present substantial risks of jury confusion under Rule 403. The dispute before the jury concerns Plaintiff's claimed losses, not generalized fluctuations in the revenues of a nonparty medical practice. Berry's opinions blur that distinction by attributing practice-level financial changes directly to Plaintiff's alleged vocational impairment without reliable economic analysis isolating causation or distinguishing between personal earning capacity and broader business performance.

Accordingly, Berry will not be permitted to testify regarding alleged net-income losses suffered by McReynolds Anesthesia, P.A., or to offer opinions calculating business-income damages based upon the practice's profit-and-loss statements. Those opinions exceed the scope of her demonstrated vocational expertise and are not supported by a sufficiently reliable methodology under Rule 702. Moreover, because the opinions risk conflating Plaintiff's individual earning-capacity claim with the financial performance of a separate business entity, any limited probative value they may possess is substantially outweighed by the danger of confusing or misleading the jury. Fed. R. Evid. 403.

Berry may testify, consistent with her training and experience in vocational rehabilitation, regarding Plaintiff's vocational impairment, physical work restrictions, loss of access to the labor

market, transferable skills, occupational change, and diminished earning capacity arising from the injuries allegedly sustained in the accident. She may also explain the vocational data and occupational classifications upon which those opinions are based.

SO ORDERED, this the 12th day of May, 2026.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE