IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN THOMAS McREYNOLDS, JR.                                          PLAINTIFF

V.                                                    CIVIL CAUSE NO. 1:24-cv-173-DAS

VAULT E&S INSURANCE COMPANY                                          DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Vault E&S Insurance Company's Motion for Summary Judgment. Plaintiff John Thomas McReynolds, Jr. asserts claims for breach of contract and bad-faith delay arising from Defendant's handling of a claim for underinsured motorist benefits under a Group Personal Excess Liability Policy issued by Vault. Having considered the parties' submissions, the record, and the applicable law, the Court concludes that the motion should be granted in part and denied in part.

## I.     BACKGROUND

The material facts are largely undisputed. On May 26, 2022, Plaintiff was involved in a motor vehicle collision in Wilcox County, Alabama. The accident report reflects that the other driver, Dre'Daesha Smith, was solely at fault for the collision. Plaintiff suffered injuries in the accident and underwent treatment, including surgical repair to his right knee.

Following the collision, Plaintiff settled with the tortfeasor's insurer, Alfa Insurance, for $77,000. Plaintiff also pursued an underinsured motorist claim against his own automobile insurer, State Farm, which ultimately settled for $775,000. Both settlements occurred before Vault received notice of Plaintiff's claim.

At the time of the accident, Plaintiff was insured under a Group Personal Excess Liability Policy issued by Vault. The policy provided excess uninsured/underinsured motorist coverage

with limits of $2,000,000. The policy states that Vault "will pay damages for bodily injury an insured person is legally entitled to receive from the owner or operator of an uninsured or underinsured auto," but "will only pay those damages in excess of the underlying insurance, or the minimum required underlying limits, whichever is greater." The policy also contains a business-pursuits exclusion. Specifically, the policy excludes coverage for damages "[a]rising out of or in connection with an insured business property or business pursuits." The policy defines "business" to include "[a] part-time or full-time trade, occupation or profession."

On January 6, 2024, Plaintiff's counsel submitted a demand letter seeking payment of the $2,000,000 policy limits. The demand asserted damages exceeding $8.6 million, including substantial claims for lost income. The record reflects that Vault thereafter undertook an investigation and repeatedly requested additional documentation, particularly financial information relating to Plaintiff's alleged loss of income. Plaintiff filed suit on July 30, 2024, asserting claims for breach of contract and bad-faith delay.

Vault now seeks summary judgment on all claims. Defendant argues Plaintiff cannot establish covered damages exceeding the underlying insurance; Plaintiff's claimed losses fall within the business-pursuits exclusion; and Plaintiff cannot establish bad faith as a matter of law.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. The Court may not weigh evidence or make credibility determinations at the summary judgment stage.

Under Mississippi law, an insured bears the burden of establishing coverage under the policy at issue. *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 625 (5th Cir. 2008). Conversely, an insurer seeking to avoid coverage based upon an exclusion bears the burden of demonstrating the applicability of the exclusion. *Id.*

## III. ANALYSIS

### a. *Breach of Contract*

Vault first argues that Plaintiff cannot establish entitlement to benefits under the policy because Plaintiff has failed to present evidence of covered damages exceeding the underlying insurance recoveries. The Court concludes that genuine disputes of material fact preclude summary judgment on the breach-of-contract claim.

The core dispute in this case concerns the nature of Plaintiff's claimed economic losses. Vault characterizes the claim as one for business losses sustained by Plaintiff's medical practice, McReynolds Anesthesia, P.A., rather than damages for Plaintiff's personal loss of earning capacity. Plaintiff, by contrast, contends that the accident diminished his own ability to perform pain-management procedures that previously generated substantial personal income. Viewing the record in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Plaintiff seeks only unrecoverable business losses.

Plaintiff testified that, prior to the accident, he personally performed a substantial number of pain-management procedures requiring him to stand for extended periods while wearing heavy lead protection. He testified that, following the accident, he could no longer "stand in one spot with 10 pounds of lead on and do a hundred procedures a week anymore." Plaintiff further testified that he transitioned into a more administrative and supervisory role after the collision.

Importantly, Defendant's own expert, CPA Jeffrey Windham, acknowledged that Plaintiff personally performed numerous pain blocks before the accident and that, after the accident, Plaintiff reportedly could no longer perform those procedures in the same manner. Windham further testified that "net income is more representative of the flow through earnings to Dr. McReynolds" than W-2 salary alone. He also acknowledged that Plaintiff's personal distributions declined following the accident. Similarly, Plaintiff's vocational expert, Dr. Allison Shipp Berry, testified that her opinions concerned Plaintiff's "individual earnings capacity" rather than merely the gross revenues of the medical practice itself. Berry explained that Plaintiff's post-accident role differed substantially from his prior work because he was no longer physically capable of performing procedures at the same level.

To be sure, Vault presents substantial countervailing evidence. Plaintiff's annual salary remained approximately $240,000 following the accident. The medical practice itself continued operating and, according to Defendant's evidence, ultimately experienced increased revenues following changes to the Baptist Hospital arrangement. Vault also points to evidence that the practice experienced financial decline even before the accident.

But these competing factual interpretations underscore why summary judgment is inappropriate on the contract claim. A reasonable jury could conclude that Plaintiff suffered a genuine diminution in personal earning capacity even if the medical practice itself remained operational or even profitable. Mississippi law recognizes loss of earning capacity as a personal injury damage distinct from simple wage loss. The fact that Plaintiff's compensation structure involved an S-corporation and included distributions tied to procedural work does not necessarily transform the claim into a pure business-loss claim.

Vault relies heavily on *Christensen v. GEICO General Insurance Co.*, 2009 WL 2843285 (N.D. Miss. Aug. 31, 2009), where the district court rejected a physician's claim for diminished earning capacity following a bench trial. But Christensen was decided after trial, not at the summary judgment stage. Moreover, the court in Christensen found the plaintiff's expert proof ultimately unpersuasive after weighing the evidence and assessing credibility. Here, the Court's task is far narrower. At this stage, the Court must determine only whether genuine factual disputes exist.

The Court likewise declines to grant summary judgment based upon Defendant's arguments attacking the admissibility or reliability of Plaintiff's experts. Defendant has separately challenged those opinions under Rule 702. While the admissibility issues are significant, the Court cannot conclude on the present record that Plaintiff lacks all admissible evidence supporting his loss-of-earning-capacity theory. Plaintiff's own testimony, portions of Windham's testimony, and other record evidence create factual disputes regarding the existence and extent of any post-accident diminution in earning capacity.

Vault further argues that Plaintiff cannot establish damages "in excess of the underlying insurance" because Plaintiff settled with State Farm for less than the full available limits. The Court is unpersuaded that this issue warrants summary judgment.

The policy states that Vault will pay damages "in excess of the underlying insurance, or the minimum required underlying limits, whichever is greater." The record reflects that Plaintiff recovered substantial sums from both Alfa and State Farm. Whether Plaintiff's damages exceed those recoveries presents a factual question intertwined with the disputed evidence regarding Plaintiff's alleged earning-capacity losses.

The Court also concludes that summary judgment is inappropriate based upon the policy's business-pursuits exclusion. Under Mississippi law, exclusions are construed narrowly, and ambiguities are resolved in favor of the insured. *See Corban v. United Servs. Auto. Ass'n*, 20. So. 3d 601, 609 (Miss. 2009). Although the policy broadly excludes damages "[a]rising out of or in connection with" business pursuits, the present record does not permit the Court to conclude, as a matter of law, that Plaintiff seeks solely excluded business damages.

Plaintiff does not seek recovery on behalf of the medical practice as a separate entity. Instead, he alleges his bodily injuries reduced his own capacity to personally perform income-generating procedures. The mere fact that Plaintiff's earnings flowed through a professional association does not automatically render all resulting losses excluded business damages.

Vault cites *Allstate Insurance Co. v. Pierce*, 271 F. App'x 416 (5th Cir. 2008), for the proposition that "arising out of" language must be construed broadly. But Pierce involved liability arising from conduct undertaken within the insured's employment duties. The present dispute is materially different. Here, the underlying bodily injury arguably falls within the general subject matter of the policy's UIM coverage. The question is whether Plaintiff's claimed damages constitute personal loss of earning capacity flowing from bodily injury or excluded business losses tied solely to the operation of the medical practice. On this record, reasonable jurors could differ on that question.

Accordingly, the Court concludes that genuine disputes of material fact remain regarding whether Plaintiff sustained compensable loss-of-earning-capacity damages in excess of the underlying insurance recoveries and whether those alleged damages fall within the scope of coverage afforded by the Vault policy. For those reasons, Defendant is not entitled to summary judgment on Plaintiff's breach-of-contract claim.

### b. *Bad Faith & Punitive Damages*

Under Mississippi law, punitive damages in the insurance context are reserved for extraordinary circumstances. *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1095 (Miss. 1996). An insurer is entitled to dispute claims that are fairly debatable, and punitive damages are unavailable where the insurer possesses an arguable or legitimate basis for denying or delaying payment. To prevail on a bad-faith claim, an insured must establish not only the absence of an arguable basis, but also conduct amounting to an intentional wrong, insult, abuse, or such gross negligence as to constitute an independent tort. *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that Vault lacked an arguable basis for its handling of the claim. On the contrary, the undisputed record demonstrates that the claim presented substantial and legitimate questions concerning both coverage and damages.

Most notably, the bulk of Plaintiff's demand consisted of alleged economic losses tied to his medical practice and his claimed diminution in earning capacity. Evaluating those claims necessarily required analysis of complicated financial records, business structures, procedural revenue streams, distributions, and disability-related payments. The record reflects that Vault repeatedly requested financial documentation, billing records, tax materials, settlement information, and other records relevant to evaluating the claim.

The record further reflects that Plaintiff's damages calculations evolved over time. Defendant notes that Plaintiff's initial demand asserted income-related losses exceeding $8.6 million, while later expert opinions reduced those figures substantially. The evolving nature of the claim itself supports the reasonableness of Vault's continued investigation.

Additionally, the underlying coverage issues were fairly debatable. As discussed above, the applicability of the policy's business-pursuits exclusion presents a close question that depends heavily upon disputed factual characterizations of Plaintiff's alleged losses. Likewise, legitimate disputes existed regarding whether Plaintiff had established damages exceeding the amounts recovered from the underlying insurers.

The communications contained in the summary judgment record do not reflect arbitrary refusal to investigate or intentional delay. Rather, they demonstrate ongoing communications between the parties, consultation with counsel, repeated requests for documentation, and continued evaluation of the claim. Vault received notice of the claim in early 2024, and Plaintiff filed suit only a few months later while the investigation remained ongoing. Although Plaintiff characterizes Vault's conduct as a pattern of endless requests for documentation without meaningful action, the Court cannot conclude that such conduct rises to the level necessary to support punitive damages under Mississippi law. At most, the record reflects a legitimate dispute regarding the scope and valuation of a complex underinsured-motorist claim involving substantial alleged economic damages. Because the undisputed evidence establishes that Vault possessed at least an arguable basis for its handling of the claim, Plaintiff's bad-faith and punitive-damages claims fail as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Vault E&S Insurance Company's Motion for Summary Judgment is granted in part and denied in part. The motion is denied as to Plaintiff's breach-of-contract claim and granted as to Plaintiff's bad-faith and punitive-damages claims.

SO ORDERED, this the 12th day of May, 2026.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE