IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN THOMAS McREYNOLDS, JR. — PLAINTIFF

V. — CIVIL CAUSE NO. 1:24-cv-173-DAS

VAULT E&S INSURANCE COMPANY — DEFENDANT

ORDER REGARDING PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE DEMAND LETTERS AND DISABILITY-BENEFIT EVIDENCE [82]

Before the Court is Plaintiff's Motion *in Limine* to Exclude Demand Letters and Disability-Benefit Evidence, which has been fully briefed. Having considered the parties' submissions, the Court's prior rulings, and the applicable law, the Court concludes that the motion should be granted in part and denied in part.

Plaintiff seeks to exclude two general categories of evidence: first, demand letters submitted to other insurers, including State Farm and NFP; and second, materials associated with Plaintiff's disability-benefit claim, including an Attending Physician Statement and a summary of payments made by MetLife. The Court addresses the categories separately.

I. Demand Letters

Plaintiff first seeks exclusion of demand letters sent in connection with his insurance claims, arguing principally that they constitute settlement communications barred by Federal Rule of Evidence 408 and, alternatively, that their limited probative value is substantially outweighed by the dangers identified in Rule 403. The Court concludes that the State Farm demand and the NFP correspondence require different treatment.

Rule 408 prohibits admission of compromise offers and statements made during compromise negotiations when offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction. To the extent the State

Farm demand was made in the course of negotiations concerning a disputed uninsured- or underinsured-motorist claim, it falls within the protection afforded by Rule 408 when offered to establish that Plaintiff previously valued his damages differently or to attack the amount of his present claim.

Vault states that it does not seek to prove that the amount demanded from State Farm represented Plaintiff's actual damages, but instead seeks to demonstrate that Plaintiff's damages calculation has changed over time. That distinction does not materially alter the Rule 408 analysis. Using a settlement demand to demonstrate that a litigant previously asserted a different valuation of the same underlying injury is, in substance, using the communication to challenge the amount of the present claim or to impeach the claimant through an inconsistent settlement position. Rule 408 does not permit that use.

Moreover, whatever marginal relevance the amount demanded from State Farm might possess is substantially outweighed by the risk of confusing the jury with a collateral inquiry concerning prior settlement positions, negotiations with another insurer, and the reasons particular amounts may have been demanded at different stages of the underlying claims.

Accordingly, Plaintiff's motion is granted as to the State Farm demand letter. Vault may not introduce the letter or refer to the amount demanded from State Farm for the purpose of challenging Plaintiff's present valuation of his damages or impeaching Plaintiff based upon an asserted inconsistency in settlement positions.

The NFP correspondence stands on different footing. According to Vault, that letter constituted the initial presentation of Plaintiff's excess UIM claim and was sent before any dispute had arisen between Plaintiff and Vault. On the present record, the Court cannot conclude the communication itself constituted a compromise negotiation within the meaning of Rule 408.

The fact and timing of Plaintiff's notice to Vault may be relevant to issues remaining in the case, including any properly preserved defense concerning compliance with policy conditions. Likewise, evidence identifying what claim Plaintiff presented to Vault may be necessary to explain the contractual relationship and the sequence of events without implicating the now-dismissed bad-faith claim.

But admissibility of the NFP letter for those limited purposes does not render every statement contained in the letter admissible for every purpose. The document apparently includes attorney advocacy, characterizations of damages, and a demand for policy benefits. Those portions may raise separate concerns under Rules 401, 403, and the hearsay rules depending upon the purpose for which they are offered.

The Court therefore declines to exclude the NFP correspondence categorically. Vault may establish, through otherwise admissible evidence, when Plaintiff presented his claim, the nature of the claim presented, and information relevant to any properly preserved notice or policy-compliance issue. The Court will not, however, permit the letter to be used as a vehicle for placing attorney argument before the jury, litigating the propriety of Vault's claims handling, or suggesting that Plaintiff's present damages should be rejected merely because counsel previously demanded a different amount.

To the extent Vault intends to offer the NFP letter itself rather than simply establish the relevant historical facts through testimony or stipulation, counsel shall confer concerning appropriate redactions. Any remaining dispute concerning particular portions of the letter shall be raised with the Court outside the presence of the jury.

II. Disability-Benefit Evidence

Plaintiff next seeks exclusion of materials relating to his disability-benefit claim with MetLife, including an Attending Physician Statement and a summary of disability payments. He argues that the evidence is inadmissible under the collateral source rule and, independently, under Rules 401 and 403. The Court agrees that evidence establishing the existence or amount of disability benefits paid to Plaintiff should not be presented to the jury.

Under Mississippi's collateral source rule, compensation received by an injured plaintiff from an independent source generally does not reduce the damages otherwise recoverable from the defendant. *See Phillips v. Western Co. of N. Am.*, 953 F.3d 923 (5th Cir. 1992). The evidentiary component of that rule ordinarily prevents the jury from learning of collateral payments where the natural tendency of that evidence would be to reduce the plaintiff's recovery because another source has already compensated him.

That concern is particularly significant here. The jury will be asked to determine the amount of covered damages Plaintiff sustained. Evidence that a disability insurer paid Plaintiff particular sums creates a substantial risk that jurors will conclude, consciously or otherwise, that Plaintiff has already been compensated for some portion of his losses and should therefore receive less under the Vault policy.

Vault argues that it does not intend to use the payments as an offset, but instead contends that the payment history demonstrates periods during which Plaintiff suffered no loss of income or earning capacity. The Court is not persuaded that the payment amounts themselves reliably establish that proposition. The receipt, cessation, or amount of disability benefits does not necessarily establish Plaintiff's actual earnings or earning capacity during a particular period,

and admitting the payment information for that purpose would create a substantial danger that the jury would nevertheless use the evidence as an impermissible collateral-source offset.

Accordingly, Plaintiff's motion is granted as to evidence of the existence or amount of disability-benefit payments. Vault may not inform the jury that Plaintiff received disability benefits from MetLife, identify the amount of those payments, or argue that such payments reduced or satisfied any portion of the damages Plaintiff claims in this action.

The Court reaches a different conclusion as to the underlying medical information contained in the disability file. The collateral source rule does not render otherwise admissible evidence inadmissible merely because the information happens to appear in records generated in connection with a disability-benefit claim. Evidence concerning Plaintiff's physical condition, restrictions, ability to work, treatment, or duration of impairment may bear directly on his claimed loss of earning capacity. If an Attending Physician Statement contains otherwise admissible medical information relevant to those subjects, the fact that the statement was prepared in connection with a disability claim does not, standing alone, require its exclusion.

The Court therefore declines to exclude the Attending Physician Statement categorically. Any reference identifying MetLife, the existence of a disability insurance claim, Plaintiff's entitlement to disability benefits, or the amount of any such benefits shall be redacted unless the Court permits otherwise outside the presence of the jury. The Court does not presently decide whether every statement contained in the physician form satisfies an exception to the hearsay rule. Vault relies upon Rules 803 and 902, while Plaintiff disputes whether the necessary foundation has been established. Those issues depend upon the particular statement offered, its source, the purpose for which it is offered, and the foundation presented at trial. They are therefore better addressed in context.

This same principle applies more generally to the disability file. Vault may not introduce collateral-source payment evidence merely by characterizing it as evidence of causation or impeachment. But Plaintiff likewise may not exclude independently relevant medical or work-capacity evidence solely because it was collected in connection with a disability claim. Accordingly, Plaintiff's Motion in Limine to Exclude Demand Letters and Disability-Benefit Evidence is GRANTED IN PART and DENIED IN PART.

Counsel shall raise any dispute concerning proposed redactions or a contemplated use outside these parameters with the Court before presenting the disputed material to the jury.

SO ORDERED, this the 1st day of October, 2026.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE